## Williams v. Commonwealth.

May 2, 1950.

L. B. Handley, Judge.

James H. Gillenwater and J. R. White for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

MORRIS, COMMISSIONER—Reversing.

Appellant was convicted on a charge of grand larceny alleged to have been committed by stealing three cows belonging to Prentice Smith. The penalty was fixed at confinement in the penitentiary for a period of three years, and from a judgment in accord with the jury's verdict appeal is presented. While motion for new trial embraced five or more grounds in support, only two are urged here.

(1) The court allowed incompetent and prejudicial evidence to go to the jury over defendant's objection; (2) The evidence was not sufficient to take the case to the jury or to support the verdict, hence the court should have sustained defendant's motions for directed verdict of not guilty.

On the morning of April 27, 1949, Mr. Smith discovered that three of his cows were missing from the lot where they and others were kept. He, his son and some neighbors, and later a sheriff, made investigation; they found that a fence had been cut and evidences of a truck having been backed up to a bank, as they thought for the purpose of loading cattle into it. They noticed a peculiar or distinguishing mark made by one tire. They, or some of the parties, undertook to trace the path of the truck from the Smith farm to the home of appellant's mother-in-law, and to his home, a considerable distance, and at intervals saw a mark made by a defective tire.

When they reached the home of Williams they examined one of the tires which they said bore such defect as had or would have made the mark found on the Smith premises, and at intervals on the road. They say that they also found evidences in the truck which indicated that cattle had been hauled. They, and the sheriff, also found a smudge of red clay on the rear portion of the truck. A small bit of this was taken to the Smith farm and compared with some clay on a bank on that place, and it appeared to be the same sort of clay. This particular evidence is the subject of the main ground of error.

The sheriff and other witnesses were asked this question, "In your judgment was this clay that came off the corner of the truck bed and the clay there on that bank the same type of clay?" One answer was, "There

is no question about it." Another, "Yes sir." The question was again propounded in this form: "Apparently was it the same as the clay on the bank where the cattle were loaded? Ans. Yes sir." At this point we may say that defendant introduced witnesses who said that red clay was common in Metcalfe County where Williams lived, and one witness, a neighbor of Williams, testified that Williams had frequently loaded cattle or other livestock from a red clay bank on his place.

It is unnecessary to go into a more detailed recital of the proof by the Commonwealth, except to point out that the Commonwealth introduced one witness, who apparently was a volunteer, who said that about daylight on April 28, the morning when the disappearance of the cows had been discovered, Williams aroused him and told him he had seen three cows on the side of the road not far from the home of witness, and asked him if any of his cows were missing. Upon investigation he found that they were not his. It also appears that Williams had told the owner of seeing the cows, and directed him to the place where they were found and returned to Smith's farm.

The evidence shows that Williams owned a farm of more than 100 acres; raised tobacco, traded in livestock and hauled stock for other persons. He testified that he had spent the night at his home, and had arisen about daylight and gone to a saw mill and procured some wood and sawdust, the latter in preparation for hauling some livestock either that day or the next. His wife corroborated his testimony as to his being at home on the particular night and leaving about daylight, and as to the latter some of his neighbors corroborated him. He also testified that he had hauled some livestock on the day before the investigation, and denied that he had ever been on the Smith farm or that he had taken any of his livestock.

The evidence against Williams was purely circumstantial, and when taken in connection with Williams' straight-forward evidence presents a case where the evidence is about as consistent with innocence as guilt. We have held that where evidence is purely circumstantial it should exclude reasonable hypothesis of innocence. Mattingly v. Com., 195 Ky. 838, 243 S. W. 1044.

It is clear from the record that the only incriminat-

ing circumstances testified to are the tracing of the distinguishing mark on the tire of the truck, which is neither clear nor satisfactory, and the evidence in reference to the clay found on the truck, and compared with the clay on the bank on Smith's place.

We think that the clay evidence in the form it was elicited was not only incompetent but prejudicial. The answers, with the possible exception of one, were mere conclusions by witnesses who do not show themselves to be experts, or learned in the characteristics of clay or red clay. Ordinarily the witness testifying on matters of this sort should do more than testify as to mere deductions or expressions of opinions. Tungent v. Com., 303 Ky. 834, 195 S. W. 2d 785.

Much evidence was introduced pro and con with respect of the general reputation of the defendant, and reference made to other "charges" against him bearing on his reputation. The testimony took a wide range and did not conform to Sec. 597, Civil Code of Practice, and rules of law with respect to this character of evidence. However, we may not consider this phase, because of lack of timely objections.

The officers of the Commonwealth in brief concede the incompetency of the testimony objected to and noted above, and that without this testimony the evidence was not sufficient to take the case to the jury and we agree.

Therefore the judgment is reversed for a new trial consistent herewith.

Judgment reversed.